**FILED**
**U.S. District Court**
**Northern District of Iowa**
**November 17, 2003**
**By: MJ**
**Copies mailed/faxed to counsel of record, pro se parties**
**and others listed here:**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| GOSS INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>TOKYO KIKAI SEISAKUSHO, LTD, a Japanese corporation and TKS (U.S.A.), INC., a Delaware corporation.<br><br>    Defendants. | No. C00-0035<br><br>**ORDER REGARDING DEFENDANTS' MOTION IN LIMINE REGARDING EXPERTS' OPINIONS** |

_____

## *I. INTRODUCTION*

This matter is before the Court pursuant to the Motion in Limine Regarding Experts' Opinions (docket no. 345) filed by Defendants Tokyo Kikai Seisakusho, Ltd., and TKS (U.S.A.), Inc. (collectively "TKS") on October 17, 2003. Plaintiff Goss International Corporation ("Goss") resisted TKS's Motion on October 24, 2003.

In their Motion in Limine, TKS seeks to exclude at trial all or a portion of the proffered expert opinions of Goss's expert witnesses Michael Coursey, Robert S. Sims and Roland T. Palmatier. TKS argues that Mr. Coursey's proffered expert witness testimony is inadmissible because: (1) it is not the proper subject of expert testimony because he gives opinions on domestic law and speculates as to what a governmental decision-making body would or would not do; (2) it is irrelevant because it concerns proceedings before the United States Department of Commerce (the "DOC") and the United States International Trade

Commission (the "ITC") brought pursuant the 1930 Tariff Act (the "1930 Act"); (3) the probative value of Mr. Coursey's testimony is substantially outweighed by the danger of unfair prejudice, confusion of issues, or the potential to mislead the jury.

TKS seeks to exclude the testimony of Mr. Sims on the grounds that his testimony: (1) is not the proper subject of expert testimony because he gives opinions on domestic law and speculates as to what a governmental decision-making body would or would not do; (2) is irrelevant because it concerns proceedings before the United States Department of Commerce (the "DOC") and the United States International Trade Commission (the "ITC") brought pursuant the 1930 Act; (3) the probative value of Mr. Sims' testimony is substantially outweighed by the danger of unfair prejudice, confusion of issues, or the potential to mislead the jury; (4) it is inadmissible under *Daubert* because the methodology used by Mr. Sims in price adjustment and comparability analysis is contrary to the Antidumping Act of 1916 (the "1916 Act"); and (5) is based solely upon the opinion of Plaintiff's expert Mr. Palmatier and information obtained by an entity simply identified as Capital Trade Resources.

TKS further seeks to exclude the testimony of Mr. Palmatier pertaining to his "determination of comparable Japanese products sold for each U.S. sale" and "normal manufacturing cost changes over time in the LNPP industry" on the grounds that his methodology is contrary to the 1916 Act.

In response, Goss contends Mr. Coursey's testimony is admissible because: (1) his testimony covers the same topic as TKS's experts; (2) he will provide meaningful assistance by explaining agency procedures and how specific facts may be applied to these procedures. Goss argues that Mr. Sims' testimony is admissible because: (1) he uses sound methodology; and (2) he is entitled to rely on another expert's analysis.

Goss further contends that Mr. Palmatier's testimony is admissible because: (1) TKS fails to explain their objection to Mr. Palmatier's testimony; and (2) his testimony is

2

Case 1:00-cv-00035-LRR-JSS   Document 382   Filed 11/17/03   Page 2 of 7

supported by case law.

## II. ANALYSIS

### A. Michael Coursey

Goss characterizes Mr. Coursey's proffered testimony as "an explanation of agency procedures. Coursey then applies given facts to these procedures." The Court's review of Mr. Coursey's expert report reveals that Mr. Coursey's proffered testimony concerns only the proceedings before the DOC and ITC. The Court has already determined that any evidence regarding the DOC and ITC proceedings under the 1930 Act is inadmissible because such evidence is unduly prejudicial, will cause undue delay and will likely confuse the jury. In fact, Mr. Coursey admitted in his expert report that agency proceedings under the 1930 Act are irrelevant to a proceeding brought under the 1916 Act:

> 10. . . . As an international trade law practitioner, I am aware of no requirement that antidumping calculations under the 1916 Act be circumscribed, or even guided, by methodological standards under the 1930 Act. As a former Commerce decision-maker, I cannot recall any instances where Commerce was asked to calculate dumping under the 1916 Act, or advise or assist any party on 1916 Act dumping calculation methods. Indeed, the two statutes are completely separate, and embody separate concepts of dumping.

The Court thus finds that Mr. Coursey's expert opinion regarding the DOC and ITC proceedings under the 1930 Act is not relevant to any issues raised in the instant case. Therefore, this portion of TKS's Motion in Limine shall be granted. *See* Fed.R.Evid. 402 (irrelevant evidence is inadmissible).

### B. Robert Sims

#### 1. Expert Testimony Regarding DOC and ITC Proceedings

For the same reasons the Court excluded Mr. Coursey's expert opinion, the Court

3

finds that Mr. Sims may not testify regarding the DOC and ITC proceedings. It is therefore ordered that TKS's Motion in Limine should be granted to the extent it seeks to exclude Mr. Sims' expert testimony regarding the DOC and ITC proceedings under the 1930 Act.

### *2. Mr. Sims' Methodology*

Goss intends to offer Mr. Sims' expert testimony regarding comparisons of sales prices in the United States to sales prices in Japan. As part of his analysis, Mr. Sims started with the gross contract price for printing units in the United States and the gross contract price in Japan for such units. He then made adjustment to the prices to account for the number of printing units sold, to negate the effect of any lesser components bundled in the sale, and determined the appropriate yen to dollar exchange rate. Mr. Sims also summed the amount of freight, duty, and other charges and expenses necessarily incident to the importation and sale in the United States and added it to the price of the Japanese printing units. Mr. Sims then compared the two numbers. TKS argues that Mr. Sims does not comply with the price-to-price comparison required by the 1916 Act.

Admission of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise.

Rule 702 imposes an important gatekeeper function on the district court by requiring that the court ensure that three requirements are met before admitting expert testimony: (1) the expert is qualified to testify by knowledge, skill, experience, training, or education; (2) the testimony concerns scientific, technical, or other specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in understanding or determining a fact in issue. *See* Fed.R.Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589,

4

592 (1993) (discussing trial court's role in screening scientific expert testimony for reliability and relevancy); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999) (extending *Daubert's* gatekeeping obligation to technical and other specialized expert testimony). In order to determine whether expert testimony is reliable under *Daubert*, "the court must conclude that the testimony was derived from the application of a reliable methodology or principle in the particular case." *United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir. 1993).

The proponent of an expert witness bears the burden of establishing the Rule 702 admissibility requirements by a preponderance of the evidence. *See* Advisory Committee Notes to Fed.R.Evid. 702. Any doubts regarding the admissibility of expert testimony should be resolved in favor of admission. *See Clark v. Heidrick,* 150 F.3d 912, 914 (8th Cir. 1998) (citations omitted). *See also National Bank of Commerce v. Associated Milk Producers, Inc.*, 191 F.3d 858, 862 (8th Cir. 1999) (citations omitted) (noting that it is not the court's role to weigh expert testimony).

TKS does not challenge Mr. Sim's qualifications to render an expert opinion. Rather, TKS argues that Mr. Sims "grossly depart[s] from the 1916 statutory method and engage[s] in what can best be described as [his] own adjustment analysis." However, TKS does not provide any explanation of what methodology is required by the 1916 Act. The Court has reviewed Mr. Sims' expert report and finds that Mr. Sims' methodology is sound. Mr. Sim's conclusions, whether actually correct or not, logically flow from the calculations contained in his expert report.

The Court further finds that an expert witness may rely upon another expert's opinion if is the type reasonably relied upon by experts in that particular field. *See* Fed.R.Evid. 703 (facts or data need not be admissible in evidence if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject). Unlike an ordinary witness, an expert witness is permitted wide latitude to offer opinions, including

those that are not based on firsthand knowledge or observation.  *See* Fed.R.Evid. 702 and 703.  Presumably, this relaxation of the usual requirement of first-hand knowledge, a rule which represents "a 'most pervasive manifestation' of the common law insistence upon 'the most reliable sources of information,'" is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. Advisory Committee's Notes on Fed.R.Evid. 602 (citation omitted).  The Court thus finds that Mr. Sims' reliance on Mr. Palmatier's analysis does not warrant exclusion of Mr. Sims' expert opinion.

The Court therefore holds that to the extent that TKS disagrees with Mr. Sims' basis for his conclusions or the ultimate validity of those conclusions, TKS is, of course, free to cross-examine Mr. Sims and present contrary evidence.  Thus, in keeping with the Eighth Circuit Court of Appeal's liberal interpretation of Rule 702, the Court finds that Mr. Sims' expert opinion is reliable and may be considered by the jury.

### C.  *Roland Palmatier*

TKS challenges the methodology used by Mr. Palmatier in his "determination of comparable Japanese products sold for each U.S. sale" and "normal manufacturing cost changes over time in the LNPP industry" on the grounds that his analysis departs from the method proscribed by the 1916 Act.  However, TKS does not provide any explanation of what methodology is required by the 1916 Act.  The Court has reviewed Mr. Palmatier's expert report and finds that his methodology is sound.  Mr. Palmatier's conclusions, whether actually correct or not, logically flow from the calculations contained in his expert report. The Court thus holds that to the extent that TKS disagrees with Mr. Palmatier's basis for his conclusions or the ultimate validity of those conclusions, TKS is, of course, free to cross-examine Mr. Palmatier and present contrary evidence.  In keeping with the Eighth Circuit Court of Appeal's liberal interpretation of Rule 702, the Court finds that Mr. Palmatier's expert opinion is reliable and may be considered by the jury.

### III. CONCLUSION

IT IS ORDERED that:

1. TKS's Motion in Limine Regarding Experts' Opinions (docket no. 345) is DENIED in part and GRANTED in part as set forth above.
2. The attorneys are prohibited from directly or indirectly offering, referring to or eliciting questions concerning:
   a. Michael Coursey's expert opinion regarding the DOC and ITC proceedings under the 1930 Act; and
   b. Robert Sims' expert opinion regarding the DOC and ITC proceedings under the 1930 Act.
3. Each party has the responsibility of cautioning any witness it calls to testify at trial of this Court's Order regarding TKS's Motion in Limine.

**IT IS SO ORDERED.**

**DATED** this 17th day of November, 2003.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA